

**THE CITY OF NEW YORK**

**LAW DEPARTMENT**

100 CHURCH STREET
NEW YORK, NY 10007

Hon. Sylvia O. Hinds-Radix
*Corporation Counsel*

Melanie V. Sadok
phone: (212)356-4371
fax: (212)356-2019
email: msadok@law.nyc.gov

February 28, 2022

**By ECF**
The Honorable Katherine Polk Failla
United States District Judge
United States District Court, Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

     Re:  *Foundation Against Intolerance & Racism v. The City of New York, et al*,
       22-CV-00528 (SDNY)(KPF)(JW)

Your Honor:

   I am an Assistant Corporation Counsel in the office of Hon. Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, attorney for defendants City of New York, the New York City Department of Health and Mental Hygiene ("DOHMH"), and David A. Chokshi, as Commissioner of DOHMH (collectively "City Defendants") in the above-referenced matter. I am writing in accordance with Your Honor's February 25, 2022 Order (ECF 29) directing Defendants to submit a letter in opposition to Plaintiffs' motion seeking to temporarily and preliminarily enjoin certain components of the December 27, 2021 New York State guidance and DOHMH advisory (collectively the "Challenged Guidance").[1] In particular, Plaintiffs seek to enjoin that aspect of the Challenged Guidance which provides that being a non-white or Hispanic patient can be considered a risk factor when determining prioritization for the distribution of oral antiviral and monoclonal antibody treatments for COVID-19 in times of supply shortages.

   Plaintiffs' motion for immediate emergency injunctive relief should be denied. Preliminarily, it is important to note that Plaintiffs themselves have not acted in a manner commensurate with an emergency. Not only did they take three weeks to commence an action challenging the Challenged Guidance after it was issued, they did not commence this motion until February 23, 2022, almost two months after the Challenged Guidance took effect (and more than a month after they filed the initial complaint). Significantly, in this time period, circumstances changed and there is no longer a shortage of the antiviral treatments at issue

---

[1] In the event the Court is inclined to grant the preliminary injunction, City Defendants respectfully request the opportunity to fully brief their opposition to the motion.

herein. In fact, there is currently a surplus, as well as new antiviral treatments that are available. To that end, DOHMH issued an advisory informing medical providers of this fact.[2] Consequently, there is simply no need for a temporary or preliminary injunction in this case.

Furthermore, Plaintiffs are not able to demonstrate that they are entitled to such a drastic remedy. Plaintiffs have not established, nor can they establish, that they have standing to bring this action. It is a plaintiff's burden to establish that there is a "case or controversy" between himself and the named defendants in this case. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975). To establish Article III standing, "a plaintiff must [] allege, and ultimately prove, that he has suffered an injury-in-fact that is fairly traceable to the challenged action of the defendant, and which is likely to be redressed by the requested relief." *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003). A court's jurisdiction cannot be invoked unless the named plaintiff has personally suffered "some threatened or actual injury resulting from the putatively illegal action[.]" *Warth,* 422 U.S. at 499. "To qualify as a constitutionally sufficient injury-in-fact, the asserted injury must be 'concrete and particularized' as well as 'actual or imminent, not 'conjectural' or hypothetical.'" *Baur*, 352 F.3d at 632.

Here, there is no case or controversy, and Plaintiffs have not suffered an actual or imminent injury in fact. Plaintiff Stewart[3] has not alleged that he had COVID-19 and was denied antiviral treatments, and it is possible that he will never contract COVID-19. Furthermore, even if Plaintiff Stewart did contract COVID-19, his symptoms may not warrant the use of the oral antiviral therapies and monoclonal antibody products at issue here. Regardless, however, the Challenged Guidance does not prevent a medical provider from exercising her clinical judgment and prescribing the antiviral to Plaintiff. The Challenged Guidance is just that—guidance, and not a law, mandate or order. Additionally, new COVID-19 treatments have recently come on the market. If Plaintiff contracts COVID-19 in the future, it is possible that he and his doctor would choose a different treatment.[4] Finally, if Plaintiff Stewart were to contract COVID-19 today, and required the use of oral antivirals or monoclonal antibody treatments, there is no longer a supply shortage of these treatments and no reason to believe that Plaintiff would not be able to access treatment. Thus, Plaintiffs have failed to demonstrate a "direct risk of harm which rises above mere conjecture." *Baur*, 352 F.3d at 636.

Contrary to Plaintiffs' argument otherwise, the Challenged Guidance does not and did not create a barrier to obtaining a benefit. The consideration of race/ethnicity as a risk factor is just one of many factors that a medical provider may consider. Plaintiff Stewart's assertion that he would be deemed ineligible for the antiviral treatments based upon the Challenged Guidance while a non-white or Hispanic person with the same age, vaccination status, and lack of other risk factors would be found eligible is not accurate. As noted above, a medical provider could exercise her clinical judgment and prescribe the antiviral to Plaintiff Stewart. Significantly, Plaintiffs have not cited to a single instance in which they are aware that an individual with

---

[2] *See 2022 Health Advisory #2: Paxlovid is Available for COVID-19 Treatment in New York City*, NYC Health (Feb. 1, 2022), https://www1.nyc.gov/assets/doh/downloads/pdf/han/advisory/2022/covid-paxlovid-available.pdf.
[3] City Defendants will address the lack of organizational standing in its fuller briefing in opposition to the motion for a preliminary injunction.
[4] *See COVID-19 Therapeutics*, HHS.gov, https://aspr.hhs.gov/COVID-19/Therapeutics/Pages/default.aspx (last visited Feb. 25, 2022).

COVID-19 who sought antiviral treatment was denied treatment, let alone denied treatment because she was non-Hispanic white.

Even if the Court were to find that Plaintiffs had standing, Plaintiffs' motion should still be denied because they are not likely to succeed on the merits of their claims[5] because the Challenged Guidance does not violate the Equal Protection Clause under the federal or state Constitutions.[6] The Challenged Guidance is subject to rational basis review because it does not create a racial classification, or "a governmental standard, preferentially favorable to one race or another, for the distribution of benefits." *Hayden v. Cty. of Nassau*, 49 (2d Cir. 1999) (internal citation omitted). It is merely guidance that suggests that race and ethnicity is one of many factors to take into account when clinically assessing a patient's need for antiviral treatments. Individually-licensed medical providers ultimately exercise their own clinical judgment in determining whether to prescribe an antiviral treatment. The Challenged Guidance withstands rational basis review because DOHMH issued the Challenged Guidance with the knowledge that racial and ethnic minorities suffer severe illness and death from COVID-19 at disproportionate rates to white individuals.[7] As such, the Guidance is rationally related to the City's legitimate interest in protecting public health by preventing the most severe forms of illness and death from COVID-19; ensuring that life-saving treatments be distributed to those at the highest risk; and preventing City hospitals from becoming overburdened. *See Clementine Co. LLC v. De Blasio*, 2021 U.S. Dist. LEXIS 232058, *39–*40 (S.D.N.Y. Dec. 3, 2021) (finding a compelling government interest in protecting public health).[8]

Respectfully submitted,

*Melanie V. Sadok*

Melanie V. Sadok
Assistant Corporation Counsel

cc:   Attorneys for Plaintiffs
      Attorneys for State Defendants (via ECF)

---

[5] Plaintiffs' Memorandum of Law focuses primarily on their Equal Protection claim, and addresses their claims under Section 1981, Title VI, and the Affordable Care Act only by footnote.

[6] Review of equal protection claims under the United States and New York constitutions are the same. *See Hayut v. State Univ. of New York*, 352 F.3d 733, 754-55 (2003).

[7] Studies show that members of racial and ethnic minority groups have higher hospitalization rates and death rates than non-Hispanic white people. *See Disparities in COVID-19-Associated Hospitalizations*, CDC.gov (updated Feb. 16, 2022) https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/racial-ethnic-disparities/disparities-hospitalization.html; *Disparities in Deaths from COVID-19*, CDC.gov https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/racial-ethnic-disparities/disparities-deaths.html (last visited Feb. 23, 2022). In addition, CDC data shows that Hispanic, Black, Asian, and Other race patients accessed monoclonal antibody treatments less often than white patients. *See* Jennifer L. Wiltz, et al., *Racial and Ethnic Disparities in Receipt of Medications for Treatment of COVID-19—United States, March 2020–August 2021*, CDC.gov (Jan. 21, 2022), https://www.cdc.gov/mmwr/volumes/71/wr/mm7103e1.htm.

[8] Even if strict scrutiny were applied, the Challenged Guidance passes Constitutional muster as it serves a compelling government interest (i.e. protecting public health by preventing the most severe forms of illness and death in the communities that have disproportionately suffered from COVID-19), and is narrowly tailored (i.e. it is not overinclusive as studies demonstrate disparate outcomes for all racial and ethnic minority groups, including Asian, and it was issued as a temporary measure to address a shortage, which does not supersede the clinical judgment of licensed medical providers.).