

May 25, 2022

**BY ECF**
Hon. Katherine Polk Failla
USDJ, SDNY

Re:   *FAIR, et al. v. City of New York, et al.*, 22-CV-528 (KPF) (JW)

Your Honor:

I write in response to the City Defendants' letter in which they (1) request a stay of discovery in this matter pending the Second Circuit's decisions in *Roberts v. Bassett* and *Jacobson v. Bassett*; and (2) seek permission to move to dismiss the First Amended Complaint in this action pursuant to Rules 12(b)(1) and 12(b)(6).[1] Plaintiffs oppose both requests.

Defendants first assert that a stay is warranted because *Roberts* and *Jacobson* challenge the City and State directives "on essentially the same grounds as Plaintiffs here." ECF No. 54 at 1. City Defendants further assert that because the plaintiffs in Roberts are challenging the denial of their motion for a preliminary injunction, "the Second Circuit may also opine on the merits of the central claim in this case as well." ECF No. 53 at 2.

A stay is an exercise of judicial discretion, and "the propriety of its issue is dependent upon the circumstances of the particular case." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). Courts must consider four factors when deciding a motion to stay an action pending an appeal: (1) whether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *McCue v. City of New York (In re World Trade Ctr. Disaster Site Litig.)*, 503 F.3d 167, 170 (2d Cir. 2007). Defendants have not carried their burden on any of these prongs. *Id*. Nor can they, given the material differences between the cases.

First, *Roberts* addressed the standing of two individual plaintiffs, and *Jacobson* analyzed the standing of one individual plaintiff. Neither case considered the issue of direct standing by an organization like FAIR. *See Nnebe v. Daus*, 644 F.3d 147, 156-57 (2d Cir. 2011) (An organization may establish injury-in-fact by showing that the challenged conduct causes a "perceptible impairment" in its activities, such as when the organization diverts resources from its other activities as a result of the challenged conduct.). The allegations in this case establish that Plaintiff FAIR has suffered such impairment as a result of the challenged state and municipal policies. ECF No. 21 at ¶¶ 26-28. And, in cases involving "multiple plaintiffs, only

---

[1]   City Defendants' sole argument under Rule 12(b)(6) is that Plaintiffs' claim under 42 U.S.C. § 1981 must be dismissed because Section 1981 does not apply to government actors – such claims must be brought under 42 U.S.C. § 1983. *See* Letter of Melanie Sadok, dated May 20, 2022 ("Sadok Letter") at 3. While Plaintiffs submit that legislative enactment of Section 1981(c) created an implied private right of action against state actors under Section 1981,

one plaintiff need possess the requisite standing for a suit to go forward." *New York v. U.S. Dep't of Agric.*, 454 F. Supp. 3d 297, 303 (S.D.N.Y. 2020).

Further, in *Jacobson*, the court found that the plaintiff lacked injury-in-fact because his complaint lacked allegations that he "inten[ded] to participate in the challenged process in the future" by "seek[ing] oral antiviral treatment in the event that he contracts COVID-19." *Jacobson v. Bassett*, 2022 U.S. Dist. LEXIS 65989, at *9 (N.D.N.Y. Mar. 25, 2022).  Here, however, the First Amended Complaint alleges that Plaintiff Stewart seeks oral antiviral treatments on an equal basis, without regard to race or ethnicity, if and when he contracts COVID-19.  ECF No. 21 at ¶ 31.  Further, in his declaration in support of Plaintiffs' motion for a preliminary injunction, Plaintiff Stewart explicitly averred that "if [he] were to test positive for SARS-CoV-2, have or develop symptoms, and be within 5-10 days of symptom onset, [he] *would* seek treatment with oral antivirals or monoclonal antibodies."  ECF No. 27-6 (emphasis added).[2]  Two other FAIR members, I.L. and Kevin Ray made the same attestation in their declarations. ECF Nos. 27-7, 27-8.[3]

Similarly, in *Roberts*, the court concluded that the challenged policies were not barriers denying equal treatment because they are merely "nonbinding guidance." *Roberts*, 2022 U.S. Dist. LEXIS 45775, at *14, 17, 22, 24-26, 28 (E.D.N.Y. Mar. 15, 2022). But the plaintiffs in that action did not submit any evidence to establish that medical providers were obligated to adhere to the challenged policies. In contrast, Plaintiffs here submitted a declaration from Emergency Medicine physician Carrie Mendoza, M.D. who averred that physicians who practice in New York would be obligated to follow the challenged directives and prioritize their COVID-19 patients for oral antiviral treatments based on race and ethnicity.  ECF No. 27-5 at ¶ 18.

Indeed, in this Court's April 20, 2022 decision on Plaintiffs' motion for a TRO and preliminary injunction, Your Honor stated that the record is presently "insufficient" to resolve the contested issue of "whether the guidance is guidance or something more mandated." ECF No. 51 at 10-11. Your Honor therefore declined to dismiss the case and instead urged the parties "to develop an appropriately robust record in discovery" to allow the Court "to determine whether Plaintiffs have alleged a constitutional violation. *Id*. The Second Circuit's decisions in *Roberts* and *Jacobson*  – both of which were dismissed on the pleadings without any discovery having occurred – will not obviate the need for factual development here.

Nor should this case be stayed because the Second Circuit in *Roberts* "may" opine on the merits of the equal protection claim. Sadok Letter at 2. To obtain a stay, a defendant must demonstrate more than a "mere possibility of relief[.]" *Nken*, 556 U.S. at 434. Here, not only have Defendants failed to show a strong possibility of relief, they have not shown that the Circuit will even address the issue at all.

---

[2]  Reference to material outside the pleadings is permitted when ruling on a motion to dismiss under Rule 12(b)(1). *Makarova v. U.S.*, 201 F.3d 110, 113 (2d Cir. 2000).

[3] For the same reason, City Defendants' argument that Plaintiff FAIR's members "are not 'ready and able' to take the Treatments" is false. Sadok Letter at 2.

Defendants next argue that they should be allowed to move to dismiss the First Amended Complaint for lack of standing pursuant to Rules 12(b)(1).[4] Sadok Letter at 2. Such a motion is premature at this juncture and, in any event, would be meritless.

The test for constitutional standing requires a plaintiff to show: (1) an injury-in-fact; (2) a fairly traceable causal connection between the actions of the defendant and the injury-in-fact; and (3) a likelihood that a favorable decision will redress the plaintiff's complained-of injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). A plaintiff asserting an Equal Protection claim can establish injury-in-fact by demonstrating that: (1) there exists a reasonable likelihood that the plaintiff is in a disadvantaged group; (2) there exists a government-erected barrier; and (3) the barrier causes members of one group to be treated differently from members of the other group. *Comer v. Cisneros*, 37 F.3d 775, 793 (2d Cir. 1994).

City Defendants posit that Plaintiffs lack standing because the challenged policy "is non-mandatory guidance for medical providers," so it therefore "does not create a barrier." Sadok Letter at 2. This disputed assertion – which draws from outside the pleadings[5] – underscores why fact discovery is necessary and why a motion to dismiss at this juncture should be denied as premature. Ultimately, a jury may be required to resolve the issue.

Nor is there merit to City Defendants' assertion that FAIR's members lack standing because they "may never test positive for COVID-19." Sadok Letter at 3. The injury-in-fact in an equal protection case of this variety is "the denial of equal treatment resulting from the imposition of the barrier, not the ultimate inability to obtain the benefit." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993); *see also Gratz v. Bollinger*, 539 U.S. 244, 260 (2003). Further, "the more drastic the injury that government action makes more likely, the lesser the increment in probability is necessary to establish standing." *Baur v. Veneman, 352 F.3d 625*, 637 (citation omitted). Where, as here, the harm includes a risk of death, "even a moderate increase in the risk of [harm] may be sufficient to confer standing." *Id.* When the "risk of harm arises from an established government policy," that is a "critical factor[ ] that weigh[s] in favor of concluding that standing exists." *Id*.

For the foregoing reasons, City Defendant's request for a stay should be denied and their application for a pre-motion conference should be denied as premature.

---

[4] City Defendants' pre-motion letter only addresses Plaintiffs' equal protection claim, not their other causes of action.

[5] Notably, the pleadings themselves allege that the policy is mandatory in nature, ECF No. 21 at ¶¶ 76, 81-83, 85-86, 92, and courts must assume the truth of material facts alleged in the complaint in considering a motion to dismiss for lack of subject-matter jurisdiction. *Hijazi v. Permanent Mission of Saudi Arabia to United Nations*, 403 Fed. App'x 631, 632 (2d Cir. 2010). Further, when a court evaluates a motion to dismiss for lack of subject-matter jurisdiction, all ambiguities must be resolved and inferences drawn in favor of the plaintiff. *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

          Respectfully submitted,

          Ameer Benno

cc:    All counsel by ECF

4