

May 25, 2022

<u>**BY ECF**</u>
The Hon. Katherine Polk Failla
USDJ, SDNY

Re:     *FAIR, et al. v. City of New York, et al.*, 22-CV-528 (KPF) (JW)

Your Honor:

I write in response to the Letter of Erin McAlister, dated May 20, 2022 ("McAlister Letter") submitted on behalf of Defendant Mary T. Bassett.  In that letter, Defendant Bassett requests: (1) a stay of discovery in this matter pending the Second Circuit's decisions in *Roberts v. Bassett* and *Jacobson v. Bassett*; and (2) permission to move to dismiss the First Amended Complaint in this action. Plaintiffs oppose both requests.

Plaintiffs object to the stay on the same grounds they asserted in their response to the City Defendants' letter.

Defendant Bassett raises several grounds in support of her request for a pre-motion conference.  She asserts that a motion to dismiss pursuant to Rule 12(b)(1) is appropriate at this juncture because: (1) Plaintiffs lack standing; (2) Plaintiffs' claims are moot; (3) some of Plaintiffs' claims are barred by the Eleventh Amendment.  She also claims that all of Plaintiffs' claims should be dismissed under Rule 12(b)(6) for failure to state a claim.  These arguments are uniformly baseless.

The test for constitutional standing requires a plaintiff to show: (1) an injury-in-fact; (2) a fairly traceable causal connection between the actions of the defendant and the injury-in-fact; and (3) a likelihood that a favorable decision will redress the plaintiff's complained-of injury. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992). A plaintiff asserting an Equal Protection claim can establish injury-in-fact by demonstrating that: (1) there exists a reasonable likelihood that the plaintiff is in a disadvantaged group; (2) there exists a government-erected barrier; and (3) the barrier causes members of one group to be treated differently from members of the other group. Comer v. Cisneros, 37 F.3d 775, 793 (2d Cir. 1994).

Defendant Bassett contends that she plans to submit proof in support of her Rule 12(b)(1) motion to demonstrate that the challenged NYS Order is advisory, not mandatory. Preliminarily, this argument undercuts Defendant Bassett's request for a stay, since the exposition of evidence should not be done through motion practice, but through the discovery process. It also underscores why fact discovery is necessary and why a motion to dismiss at this juncture should be denied as premature.  As Plaintiffs intend to adduce proof that the policy is mandatory, the issue likely will require resolution by a finder of fact.  Thus, a motion to dismiss on this basis at this point will not serve the pursuit of truth, but only to delay the action.

Defendant Bassett next maintains that Plaintiffs cannot demonstrate that they suffered harm as a result of the NYS Order, and that they would only be injured "if the contracted

COVID-19, ...sought Therapies, and ... were denied access to the Therapies" based on the NYS Order (McAlister Letter at 2). Such a blinkered view of traceability is incorrect and has been rejected by the Supreme Court. *See Gratz v. Bollinger*, 539 U.S. 244, 262 (2003) (where a race-based policy is alleged to be a barrier to equal treatment, an individual plaintiff establishes his or her standing by simply demonstrating that he or she is "able and ready" to participate in the activity where the barrier exists").

That is the circumstance here. Plaintiff Stewart and other FAIR members have averred unequivocally in their declarations (and in their verified pleadings) that "[i]f [they] were to test positive for SARS-CoV-2, have or develop symptoms, and be within 5-10 days of symptom onset, [they] would seek treatment with oral antivirals or monoclonal antibodies." This suffices to confer standing on them to challenge the NYS Orders. See also *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) ("being forced to compete in a race-based system that *may* prejudice the plaintiff" constitutes an injury under the Equal Protection Clause for purposes of standing) (emphasis added).  Further, in the Second Circuit, "*exposure* to a sufficiently serious risk of medical harm - not the anticipated medical harm itself" is the relevant injury for standing purposes. *Baur v. Veneman*, 352 F.3d 625, 641 (2d Cir. 2003) (emphasis added).  There is no question that the NYS Order exposes Plaintiffs to serious health-related risks.

Perhaps realizing as much, Defendant Bassett next asserts that enjoining the race-based aspects of the NYS Order would not redress Plaintiffs' injuries because the NYS Order is based on CDC guidance which would remain in effect, and medical providers "typically follow CDC guidance" (McAlister Letter at 2). This is inconsistent: on the one hand Bassett argues that the NYS Order is not a government-erected barrier because it is just guidance, but on the other hand that government-issued health guidance is "typically" adhered to by medical providers.[1]  In any event, it is the New York State Department of Health, not the CDC, that regulates medical professionals and distributes COVID-19 treatments in New York State. And, a federal court order that declares unconstitutional the automatic assignment of a "risk factor" based solely on a patient's race and ethnicity would certainly impact what the CDC is lawfully allowed to include in its guidance materials.[2]

Equally unavailing is Defendant Bassett's mootness argument (McAlister Letter at 2). The NYS Order establishes a race- and ethnicity-based hierarchy for allocation of treatments in times of shortage, and that Order has not been suspended or replaced. Indeed, at the Mar. 2, 2022 TRO hearing, counsel for Defendant Bassett conceded on the record that the New York State DOH "ha[s] not withdrawn" the policy and has no plans to do so.  ECF No. 42 at 11-12.  In order to establish mootness, Defendant Bassett carries the "heavy burden" of making "absolutely

---

[1]  The latter position is of course consistent with what Carrie Mendoza, M.D., Plaintiffs' expert emergency medicine physician, declared in support of Plaintiffs' motion for a TRO and a preliminary injunction.  *See* ECF No. 27-5 at ¶ 18. At a minimum, discovery is needed to suss out these claims; a stay would therefore be inappropriate and a motion to dismiss would be premature.

[2]  Further, "a plaintiff satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself.  He need not show that a favorable decision will relieve his *every* injury." *Larson v. Valente*, 456 U.S. 228, 243 n. 15 (1982) (emphasis in original).

clear" that the NYS Department of Health would never declare a new shortage of oral antiviral treatments. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2019 n.1 (2017). Far from doing this, counsel for Defendant Bassett in *Roberts* filed a letter in that case on Mar. 7, 2022 stating that the New York State DOH intends to rely on the NYS Order when supplies are low.

There is likewise no merit to Defendant Bassett's Eleventh Amendment argument. McAlister Letter at 2-3. Under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar a suit against a state official when that suit seeks prospective injunctive or declaratory relief. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996).

Similarly specious is Bassett's Rule 12(b)(6) challenge to Plaintiffs' Section 1981 claim. McAlister Letter at 3. The First Amended Complaint contains non-conclusory allegations that the NYS Order deliberately discriminates against non-Hispanic whites when it comes to accessing lifesaving COVID-19 treatments.The complaint thus alleges that Plaintiffs have been intentionally deprived  "the full and equal benefit of all laws and proceedings for the *security* of persons" – one of 42 U.S.C. § 1981(a)'s enumerated activities. *See Wong v. Yoo*, 649 F. Supp. 2d 34, 70 (E.D.N.Y. 2009).

Defendant Bassett next posits, without elaboration, that Plaintiffs' Title VI and Affordable Care Act claims "do not plausibly allege that the Therapies at issue ... are associated with any federal source of funding received by [the New York State] DOH." McAlister Letter at 3. Plaintiffs disagree and point out that Bassett takes issue with the pleadings but not the substance of the allegations.[3] Again, discovery should be had on this issue.

Defendant Bassett similarly provides no reasonable rationale for dismissing Plaintiffs' Equal Protection claim under Rule 12(b)(6). McAlister Letter at 3. On this issue, Plaintiffs refer this Court to the arguments they advanced  in support of their motion for a TRO and preliminary injunction. See ECF No. 26 at 15-22. Plaintiffs' Equal Protection claim is well pleaded, and Defendant Bassett's bald claim to the contrary does not withstand scrutiny.

Finally, Defendant Bassett's "personal involvement" and qualified immunity arguments are a feint. McAlister Letter at 3. While a defendant's "personal involvement" in an alleged constitutional deprivation is a prerequisite for a damages action under Section 1983, it does not apply to actions under Section 1983 for injunctive or declaratory relief. *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir. 1977); *Marinaccio v. Boardman*, 2005 U.S. Dist. LEXIS 42417, at *28 (N.D.N.Y. Apr. 19, 2005) (collecting cases). Likewise, qualified immunity only applies to claims seeking money damages, not those seeking injunctive or declaratory relief. *Allen v. Coughlin*, 64 F.3d 77, 81 (2d Cir. 1995).

For the foregoing reasons, Defendant Bassett's request for a stay should be denied, and her application for a pre-motion conference should be denied as premature.

---

[3]  It goes without saying that on a motion to dismiss under Rule 12(b)(6), courts must accept as true all material factual allegations in the complaint.  *J.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

Respectfully submitted,

Ameer Benno

cc:     All counsel by ECF